## IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

(U.S. District Court, 709 W. 9th Street, Rm 979, Juneau, AK 99801)

| | |
|---|---|
| Ronald Satish Emrit, ) <br>    6655 38th Lane East, ) <br>    Sarasota, FL 34243 ) <br>    (301)537-8471 ) <br>    Plaintiff (Pro Se) ) <br> ) <br> v. ) <br> ) <br> George Soros, ) <br>    ℅ **Open Society Foundations** ) <br>    224 West 57th Street ) <br>    New York, NY 10019 ) <br>    +1-212-548-0600 ) <br> ) <br> Federal Communications ) <br> Commission (FCC), ) <br> *445 12th Street, SW Washington,* ) <br> *DC 20554* ) <br> 1-888-CALL FCC (225-5322). ) <br> PRA@fcc.gov ) <br> Ajit.Pai@fcc.gov ) <br> ) <br> Federal Trade Commission ) <br> (FTC), ) <br> 600 Pennsylvania Avenue, NW ) | **RECEIVED** <br> MAR 29 2019 <br> CLERK, U.S. DISTRICT COURT <br> ANCHORAGE, A.K. <br><br> C.A. No.: 1:19-CV-00003-SLG |

Washington, DC 20580           )
(202) 326-2222                 )
                               )
                               )
& Securities Exchange          )
Commission (SEC)               )
Office of Investor Education   )
and Advocacy 100 F Street,     )
NE Washington, DC 20549-0213   )
(800) 732-0330,                )
                               )
    Defendants                 )
*************************************************************

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing these causes of action against the defendants. The plaintiff fully expects that his law school classmate Raven Liberty, Esquire of Miami-Dade County, FL will be making a "Notice of Appearance of Counsel" if and when discovery is compelled by the magistrate judge and/or presiding judge in the particular case at bar. In bringing forth these causes of action, the plaintiff states, avers, and alleges the following:

### I.) NATURE OF THE CASE

1.) With regards to tortious acts, the plaintiff alleges that at least one of the three defendants (i.e. billionaire philanthropist and investor George Soros) has committed the tortious interference with business relations/contracts by trying to annoy, threaten, or harass facebook, Amazon, Google, (and other Silicon valley companies) by manipulating the stock market through "short-swing trading" of their stocks in violation of Rule 16(b) of the Securities Exchange Act of 1934. Let it be known that the self-proclaimed "Ogmios" (of Nostradamus' famous quartets and the opposite of "Mabus") aka Saint Ronald of Soapstone (SROS) states that "By increasing the velocity of money, a nation

can increase its Gross Domestic Product (GDP), reduce frictional, cyclical, and structural unemployment from a macroeconomic perspective, and quite possibly minimize the possibility of inflation, recession, or stagflation." The Bureau of Economic Analysis (BEA) under the Department of Commerce and Bureau of Labor Statistics (BLS) under the Department of Labor measure consumer price index (CPI) and the GDP deflator which are key benchmarks that are correlated to inflation.

2.) By trying to get the Federal Communications Commission (FCC) and Federal Trade Commission (FTC) to heavily regulate Facebook, Amazon, and Google (among other "tech companies"), the plaintiff alleges that George Soros is violating the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and The Privileges and Immunities Clause (e.g. Article IV, Section 2, Clause 1 of the Constitution, i.e. the Comity Clause).

3.) Although George Soros himself is a private citizen and a non-governmental actor, he is using his wealth and influence to collude with state actors like the FCC and FTC in a similar fashion that the Republican Koch Brothers attempt to use their wealth to violate campaign finance laws and regulations promulgated by the Federal Election Commission (FEC).

4.) Accordingly, the plaintiff is suing the defendant for forty million dollars (forty million dollars) notwithstanding the Eleventh Amendment doctrine of sovereign immunity and Federal Tort Claims Act (FTCA).

5.) The plaintiff believes in "good faith" that the governmental defendants (i.e. the FCC and FTC as "state actors") would agree to be sued for pecuniary damages to ensure justice.

6.) Essentially, the plaintiff is seeking to assess joint and several liability to all three of the defendants in which they are expected to seek contribution and indemnity from each other through the filing of cross-claims based on contributory negligence, pure comparative negligence, and/or modified comparative negligence (although negligence is not one of the causes of action being alleged by the plaintiff in the particular case at bar).

## II.) PARTIES TO THIS LITIGATION

7.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Nevada. His current mailing address is 6655 38th Lane East, Sarasota, FL 34243. His cell phone number is currently (301)537-8471 and his primary email address is einsteinrockstar2@outlook.com. His secondary email address is einsteinrockstar2@outlook.com.

8.) The first defendant is George Soros. His mailing address unknown and as a result the plaintiff is requesting that the court in the present case at bar serve George Soros through publication in a major newspaper in Connecticut where the plaintiff believes that George Soros owns a mansion.

9.) The second defendant is the Federal Communications Commission. The mailing address for the Federal Communications Commission (FCC) headquarters is the following: *445 12th Street, SW Washington, DC 20554*. The telephone number for the Federal Communications Commission (FCC) headquarters is 1-888-CALL FCC (225-5322). The email address for the FCC is PRA@fcc.gov. The Chairman of FCC is Ajit Pai and his email address is Ajit.Pai@fcc.gov.

10.) The third defendant is the Federal Trade Commission (FTC). Its mailing and physical address is the following: 600 Pennsylvania Avenue, NW Washington, DC 20580. Its telephone number is (202) 326-2222.

11.) The fourth defendant is the Securities Exchange Commission (SEC). Its mailing and physical address is the following: **U.S. Securities and Exchange Commission** Office of Investor Education and Advocacy 100 F Street, NE Washington, DC 20549-0213. Its telephone number is (800) 732-0330 and fax number is (202) 772-9295.

## III.) JURISDICTION AND VENUE

12.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to

provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

13.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

14.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of Alaska (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the five defendants.

15.) As an Article III court, the U.S. District Court for the District of Alaska also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of the Equal Protection Clause, Due Process Clause, and Privileges and Immunities Clause as it relates to various federal agencies.

16.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

17.) Because the amount in controversy exceeds $75,000 (i.e. $40,000,000,000 is greater than $75,000), this court also has jurisdiction with regards to that particular issue.

### IV.) STATEMENT OF FACTS

18.) The Chief Operating Officer (COO) for Facebook is Sheryl Sandberg and the Chief Executive Officer (CEO) is Mark Zuckerberg, i.e. both Jewish executives like the Hungarian-born George Soros.

19.) Therefore, George Soros can not call the Anti-Defamation League (ADL) and claim that it is Anti-Semitic for both Sheryl Sandberg and Mark Zuckerberg to suspect that George Soros is engaging in the short-swing trading of Facebook stock, which had an initial public offering (IPO) valued at $38.00 per share several years ago.

20.) With regards to short-swing trading, an investor buys the stock at a higher price and then sells the stock at a lower price for no other reason than to lower the book

value and/or fair market value (FMV) of the stock (similar to a poison-pill transaction/mechanism with regards to corporate takeovers, mergers, and acquisitions).

21.) In a "bull market," the "bull" uses its "horns" to toss stock prices up while in a "bear market," the "bear" uses its claws to tear stock prices down.

22.) Therefore, George Soros is creating a "bear market" if he is really maliciously "shorting" Facebook stock as Sheryl Sandberg and Mark Zuckerberg suspect that he is doing.

23.) Senior and junior analysts on Wall Street (with investment banks and brokerage houses) engage in technical analysis and fundamental analysis to evaluate stock market volatility in addition to utilizing the Capital Asset Pricing Model (CAPM), Arbitrage Price Theory (APT), Black-Scholes Option Pricing Model and Hockey-Stick Diagram (for evaluating "puts" and "calls" as options), and Net Present Value (NPV).

24.) George Soros's attempts to "short" Facebook stock in particular could be construed as a blatant violation of Rule 16(b) of the Securities Exchange Act of 1934 which would give rise to a prima facie case of negligence per se if and only if (iff) George Soros owed a duty of care/loyalty and/or fiduciary duty to the plaintiff and George Soros breached said fiduciary duty by shorting Facebook stock.

25.) George Soros also appears to be attempting to get Ajit Pai and Federal Communications Commission (FCC) to heavily regulate Facebook users and advertisements in addition to regulating other Silicon Valley companies which would have a "chilling effect" on free speech.

26.) The Federal Trade Commission (FTC) has a Bureau of Economics and Bureau of Consumer Protection but neither subdivision of FTC has jurisdiction to regulate and/or penalize Silicon Valley companies because they are not engaging in deceptive advertising or deceptive trade practices despite George Soros's claim that these Silicon Valley companies are sharing and/or trading the personal and private information of consumers with each other and that Russian spies and hackers are obtaining the encrypted information of American consumers in violation of the Privacy Act of 1974

and quite possibly the Espionage Act of 1917 and Alien and Sedition Acts.

## V.) COUNT ONE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS/CONTRACTS

27.) A plaintiff must establish four elements in order to state a prima facie cause of action for tortious interference with an existing contract:

    a.) Existence of a valid contractual relationship or business expectancy;

    b. Knowledge of the contractual relationship or expectancy by the defendant;

    c.) Intentional interference inducing or causing a breach or termination of the contractual relationship or expectancy; and

    d.) Resultant damage to the party whose contractual relationship or expectancy has been disrupted.

28.) Accordingly, the plaintiff has commercially released the following four albums: "Unleash the Beast," "Welcome to Atlantis," "Rough Draft of Publicity Stunts," and "The Very Best of Satish Dat Beast."

29.) The aforementioned four albums have been distributed by the following digital distribution companies: Ditto Music (of United Kingdom), Mondotunes (of Huntington Beach, CA), CD Baby (of Portland, OR), Tunecore (of Brooklyn, NY). Distrokid, and Loudr.

30.) The previously-mentioned distribution companies have distributed the plaintiff's CD's, mp3's, ringtones, and music videos to virtual stores (with no physical

storefront) owned and operated by Amazon, Google (and its parent company Alphabet), Apple Music/itunes, Spotify, Deezer, Tidal, Facebook, MySpace, etc..

31.) As such, it can be stated with substantial certainty that the plaintiff is in "privity of contract" with the aforementioned Silicon Valley technology companies.

32.) As a result, it is a logical conclusion to say that George Soros is tortiously interfering with the plaintiff's contracts/business relations (with Silicon Valley companies) by attempting to manipulate the stock price of Silicon Valley companies including but not limited to Apple, Google, Facebook, Amazon, Microsoft, Yahoo!, etc..

33.) George Soros's purchase of common, preferred, and/or treasury stock of Silicon Valley companies (unwatered and well below par value) serves no legitimate purpose other than to annoy, threaten, or harass Silicon Valley companies because of his personal vendetta and/or agenda against the "young billionaire club" including Mark Zuckerberg, Elon Musk, Jeff Bezos, etc..

34.) As a logical conclusion, George Soros's attempts to annoy, threaten, or harass Silicon Valley companies naturally has a negative effect on the sales of the plaintiff's CD's, mp3's, ringtones, and music videos which are being sold on websites and virtual stores owned and operated by Silicon valley tech companies including but not limited to Apple, Google (and its parent company Alphabet), Amazon, Facebook, Spotify, Deezer, Tidal, etc..

## VI.) COUNT TWO: VIOLATION OF THE EQUAL PROTECTION CLAUSE

35.) The Equal Protection Clause is part of the Fourteenth Amendment to the United States Constitution. The clause, which took effect in 1868, provides that no state shall deny to any person within its jurisdiction "the equal protection of the laws".

36.) A primary motivation for this clause was to validate the equality provisions contained in the Civil Rights Act of 1866, which guaranteed that all people would have rights equal to those of all citizens. As a whole, the Fourteenth Amendment marked a large shift in American constitutionalism, by applying substantially more constitutional restrictions against the states than had applied before the Civil War.

37.) The meaning of the Equal Protection Clause has been the subject of much debate, and inspired the well-known phrase "Equal Justice Under Law". This clause was the basis for *Brown v. Board of Education* (1954), the Supreme Court decision that helped to dismantle racial segregation, and also the basis for many other decisions rejecting discrimination against people belonging to various groups.

38.) The Equal Protection Clause itself applies only to state and local governments. However, the Supreme Court held in *Bolling v. Sharpe* (1954) that equal protection requirements apply to the federal government through the Due Process Clause of the Fifth Amendment.

39.) Although it is a violation of the First Amendment right to freedom of speech and association by trying to preclude and/or enjoin free speech on Facebook through heavy FCC and FTC regulation, it is also a violation of the Equal Protection Clause inherent from the Fifth and Fourteenth Amendments for George Soros, the FCC, and FTC to try to regulate free speech on Facebook.

40.) This is a violation of the Equal Protection Clause because Americans in particular have the implied fundamental right to congregate on Facebook and share their views via Instant Messenger and/or Twitter-like newsfeeds.

## XV.) COUNT ELEVEN: VIOLATION OF THE DUE PROCESS CLAUSE

41.) The Fifth and Fourteenth Amendments to the United States Constitution each contain a due process clause. Due process deals with the administration of justice and thus the due process clause acts as a safeguard from arbitrary denial of life, liberty, or property by the Government outside the sanction of law.

42.) The Supreme Court of the United States interprets the clauses more broadly because these clauses provide four protections: procedural due process (in civil and criminal proceedings), substantive due process, a prohibition against vague laws, and as the vehicle for the incorporation of the Bill of Rights. Due process ensures the rights and equality of all citizens.

43.) The Supreme Court has interpreted the due process clauses in the Fifth and Fourteenth Amendment identically, as Justice Felix Frankfurter once explained in a concurring opinion: "To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection." In 1855, the Supreme Court explained that, to ascertain whether a process is due process, the first step is to "examine the constitution itself, to see whether this process be in conflict with any of its provisions…"

44.) Also in 1855, the U.S. Supreme Court said, "The words, 'due process of law,' were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in Magna Charta." And, the Court said this in the 1884 case of *Hurtado v. California*:

45.) Due process of law in the [Fourteenth Amendment] refers to that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure.

46.) Due process also applies to the creation of taxing districts, as taxation is a deprivation of property. Due process typically requires public hearings prior to the creation of a taxing district.

47.) The regulations and/or restrictions on the free speech of the plaintiff and other Facebook users must be content-neutral and not content-based and must not have a "chilling effect" on free speech. It must be the least-restrictive means of regulating free speech or it is an egregious violation of the procedural and substantive due process rights of the plaintiff and other members of a proposed class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP).

48.) It is almost as if George Soros is trying to lobby Congress (similar to the Koch brothers and their Republican agenda with regards to circumventing FEC laws) to enact new legislation and/or rules enabling provisions that would allow the FCC and FTC to regulate Facebook and/or assess penalties merely for allowing foreign companies to advertise on the Facebook platform/website.

## XVI.) COUNT TWELVE: VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE

49.) In the federal circuit court case of *Corfield v. Coryell*, Justice Bushrod Washington wrote that the protections provided by the clause are confined to privileges and immunities which are, "in their nature, fundamental; which belong, of right, to the citizens of all free governments; and which have, at all times, been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent, and sovereign."

50.) In his explanation of the scope of the rights protected by the clause, Justice Washington included the right to travel through states, the right of access to the courts, the right to purchase and hold property, and an exemption from higher taxes than state residents pay.

51.) The *Corfield* case involved the rights of an out-of-state citizen, rather than the rights of an in-state citizen, and Justice Washington's opinion did not suggest that this provision of the Constitution addresses how a legislature must treat its own citizens.

52.) Another pertinent federal circuit court case was decided by Justice Henry Baldwin, who succeeded Justice Washington. In the case of *Magill v. Brown*, Justice Baldwin addressed the Privileges and Immunities Clause: "We must take it therefore as a grant by the people of the state in convention, to the citizens of all the other states of the Union, of the privileges and immunities of the citizens of this state."

53.) The plaintiff argues that all five of the defendants have committed a blatant violation of the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution (i.e., the Comity Clause).

54.) More specifically, the three defendants have violated the Privileges and Immunities Clause by conspiring and/or colluding to heavily regulate and/or penalize Silicon Valley companies merely for sharing the information of Facebook users when

Facebook users have offered their implied consent to have their personal information shared simply by entering their personal and private information on a website heavily monitored by government agencies (other than FCC and FTC). If the FBI, CIA, and other law enforcement/intelligence agencies are already monitoring Facebook to gather information about persons of interest in their own investigations, why would the FCC and FTC be needed as an extra layer of protection?

55.) In fact, the FCC and FTC may impose regulations on Facebook users and advertisers which would essentially "get in the way" and/or obstruct the FBI's ability to gather information about persons of interest/suspects who are willing to divulge a plethora of information about themselves notwithstanding their 4th Amendment rights to privacy and the Privacy Act of 1974.

## XVII.) COUNT THIRTEEN: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

56.) The Americans with Disabilities Act of 1990 (42 U.S.C. § 12101) is a US labor law that prohibits unjustified discrimination based on disability. It affords similar protections against discrimination to <u>Americans with disabilities</u> as the Civil Rights Act of 1964, which made discrimination based on race, religion, sex, national origin, and other characteristics illegal.

57.) In addition, unlike the Civil Rights Act, the ADA also requires covered employers to provide reasonable accommodations to employees with disabilities, and imposes accessibility requirements on public accommodations.

58.) In 1986, the National Council on Disability had recommended enactment of an Americans with Disabilities Act (ADA) and drafted the first version of the bill which was introduced in the House and Senate in 1988.

59.) The final version of the bill was signed into law on July 26, 1990, by President George H. W. Bush. It was later amended in 2008 and signed by President George W. Bush with changes effective as of January 1, 2009.

60.) The plaintiff is disabled due to the fact that he has been diagnosed with Post-Traumatic Stress Disorder (PTSD), bipolar disorder/manic depression, and schizoaffective disorder.

61.) The plaintiff argues that it is therapeutic for him to get on Facebook (FB) and be able to have access to his friends and his support network since the plaintiff is unable to work in an office and/or warehouse setting in which the interaction with other employees, managers, and/or customers would provide a normalized setting for personal interaction and healthy communications.

62.) While some argue that "gamers" and social media users lack effective personal and face-to-face communication skills because of the fact that they are on the computer all day (or checking their Androids/iphones), it is safe to say that computers and cellphones are the future of civilization.

63.) It is a denial of reality to pretend that technology, software, social media, and video games are going to "go away" or magically disappear in favor of old-fashioned brick-and-mortar stores with physical storefronts.

64.) Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court should take judicial notice that Amazon really put Toys R Us out of business, Netflix put

Blockbuster out of business, and YouTube/Vevo are putting MTV and Viacom out of business.

65.) It may be closer to the truth that George Soros is trying to get the FCC and FTC to regulate Facebook more intensively due to the fact that Facebook, Amazon, Netflix, and Google might be negatively affecting the stock of companies that he owns which may have an older-fashioned brick-and-mortar location with a physical storefront (rather than a virtual marketplace online as with Amazon and Google Plus).

## X.) COUNT SIX: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

66.) Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, appears in volume 42 of the United States Code, beginning at section 2000e. Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.

67.) The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA (which is printed elsewhere in this publication) amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973.

68.) While George Soros is not a government or state actor, he has a tremendous on governmental entities like the FCC and FTC similar to the way that the infamous Koch Brothers have an influence on the FEC through the stare decisis of FEC v. Citizens Union.

69.) As such, it can be stated that George Soros should also be held financially liable for any damages incurred (or to be incurred in the future) by the plaintiff for

regulatory actions taken by the FCC and FTC which would also violate the Dormant Commerce Clause since Congress has plenary power over interstate commerce.

70.) Facebook, Amazon, and Google play a major role in interstate commerce since the nature of their online platforms indicates that international users can access these websites from wherever their physical location might be.

71.) Since the plaintiff is disabled and his access to the business, financial, social, and political world is facilitated through websites such as Amazon, Google, and Facebook, it can be stated with substantial certainty (and certainly not down the proverbial "slippery slope") that George Soros is violating the plaintiff's civil rights (inherent from Title VII) by trying to encourage and/or lobby Congress to impose new regulations in the Code of Federal Regulations (CFR) and/or Federal Register essentially acting as rules enabling provisions allowing the FTC and FCC to heavily regulate Facebook, Amazon, and Google.

## XVIII.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff has brought this cause of action against the four defendants who have committed the tortious interference with business relations/contracts and particularly the first defendant, i.e. George Soros, who has manipulated Facebook, Amazon, and Google stock in violation of Rule 16(b) of the Securities Exchange Act of 1934. Accordingly, the plaintiff is alleging that he should be entitled to damages in the amount of $40,000,000,000 (forty billion dollars). The plaintiff is also requesting the equitable remedy of an injunction in the form of a "cease and desist order" in which particularly the first defendant, i.e. George Soros, is precluded and/or enjoined from being able to engage in the "short-swing trading" of Facebook, Google, or Amazon stock in which his ulterior motive is to annoy, threaten, or harass the executives of these companies which he has compared to cartels and casinos. Furthermore, the plaintiff argues that George Soros (even as a non-governmental actor) is violating the Equal Protection Clause, Due Process

Clause, Privileges and Immunities Clause, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA). To clarify, George Soros may have political "clout" like the Koch Brothers given that he has the opportunity to "throw" his money around and to influence the government (as if he is a quasi-governmental entity). In establishing this "prayer for relief," the plaintiff states, avers and alleges the following:

A.) The plaintiff is seeking $40,000,000,000 (forty billion dollars) damages in the form of punitive, compensatory, treble, actual, special, and presumed damages from the defendant's commission of the aforementioned tortious interference with business relations/contracts. This $40,000,000 judgment would also be appropriate given that the plaintiff alleges that the defendants have violated his Equal Protection Rights and Due Process Rights, and have violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), and the Privileges and Immunities Clause.

B.) While punitive damages are disallowed by the common law of contracts, Restatement (Second) of Contracts and/or the Uniform Commercial Code Article 2 dealing with the sale of goods in excess of $500.00 (in which the Statute of Frauds would be applicable), the plaintiff is also seeking $40,000,000,000 (forty billion dollars) of damages in the form of expectation, reliance, restitution, incidental, and consequential damages for the material breach of contract if and only if (iff) Silicon Valley companies such as Amazon, Google, and Facebook cease "doing business" with the plaintiff because their stock has plummeted in NASDAQ, NYSE, or S&P 500 because George Soros has engaged in the "short-swing trading" of their stocks and derivatives in violation of Rule 16(b) of the Securities Exchange Act of 1934.

C.) The plaintiff is also seeking the equitable remedy of an injunction which would preclude and/or enjoin the defendant George Soros from engaging in the "short-swing trading" of the stock of Facebook, Google, and/or Amazon for the express purpose of trying to annoy, threaten, or harass the executives of these Silicon Valley "tech" companies which he has unjustly compared to casinos and cartels.

H.) The concepts of unjust enrichment and quantum meruit may also be applicable to the present case at bar.

Respectfully submitted,

Ronald Satish Emrit

6655 38th Lane East

Sarasota, FL 34243

(301)537-8471

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com



Ronald Satish Emrit
6655 38th Lane East
Sarasota, FL 34243

Attn: Clerk of the Court
U.S. District Court of Alaska
709 West 9th Street
Room 979
Juneau, Alaska 99801